IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:18-CV-298-BO

| | |
|---|---|
| PACIFIC ALLIANCE CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | O R D E R |
| ) | |
| MCCOY WIGGINS, PLLC, et al., ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on the motion of non-party MMX Transportation, Inc. ("MMX") to quash or modify a subpoena served on it by Plaintiff Pacific Alliance Corporation ("PAC") or for a protective order. [DE-57]. PAC responded in opposition to the motion [DE-61]. For the reasons that follow, the motion is allowed as to the request for a protective order and is denied as to the request to quash or modify.

## I. BACKGROUND

This case involves claims of professional negligence and breach of fiduciary duty by PAC against the law firm McCoy Wiggins and its members Richard Wiggins and Kenneth Dantinne (collectively, "counsel"). The claims arise out of counsel's representation of PAC in a North Carolina state court action to domesticate a foreign judgment obtained in Utah by PAC against Star Leasing, Inc., a North Carolina-based logistics company. PAC alleged that counsel failed to respond to requests for admission propounded by Star Leasing, and, as a result, the North Carolina state court deemed the subject matter admitted and refused to give full faith and credit to PAC's foreign judgment. Am. Compl. [DE-46].

According to PAC, Star Leasing's president, Randal Menscer, organized MMX and transferred the assets of Star Leasing to MMX. Resp. [DE-61] at 4. On December 31, 2018, PAC served on MMX a subpoena seeking certain financial and business records to be produced by January 16, 2019. Mot. [DE-57] at 1, 5–10. Counsel for MMX and PAC exchanged emails regarding the subpoena on January 10, 2019, Resp. Ex. E [DE-61-5], and MMX filed the instant motion the following day.

## II. DISCUSSION

Subpoenas issued to nonparties are governed by Fed. R. Civ. P. 45. *See* Fed. R. Civ. P. 34(c) ("As provided in Rule 45, a nonparty may be compelled to produce a document and tangible things or to permit an inspection."). "In response to such a subpoena, a non-party may either file a motion to quash or modify the subpoena pursuant to Fed. R. Civ. P. 45(d)(3)(A), move for a protective order pursuant to Fed. R. Civ. P. 26(c), or oppose a motion to compel production of the subpoenaed documents pursuant to Fed. R. Civ. P. 45(d)(2)(B)." *Schaaf v. Smithkline Beecham Corp.*, 233 F.R.D. 451, 453 (E.D.N.C. 2005) (citing *United States v. Star Scientific, Inc.*, 205 F. Supp. 2d 482, 484 (D. Md. 2002)). When considering the propriety of enforcing a subpoena, a trial court should consider "the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." *Id.* (quoting *Heat & Control, Inc. v. Hester Indus.*, 785 F.2d 1017, 1024 (Fed. Cir. 1986)). "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," and the court "must quash or modify a subpoena that subjects a person to undue burden." Fed. R. Civ. P. 45(d)(1), (d)(3)(iv).

"In the context of evaluating subpoenas issued to third parties, a court 'will give extra consideration to the objections of a non-party, non-fact witness in weighing burdensomeness versus relevance.'" *Schaaf*, 233 F.R.D. at 453 (quoting *Indem. Ins. Co. of N. Am. v. Am. Eurocopter LLC*, 227 F.R.D. 421, 426 (M.D.N.C. 2005)). The determination of the reasonableness of a subpoena requires the court to balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it, weighing the benefits and burdens, considering whether the information is necessary and whether it is available from another source. *See* 9A Wright & Miller, *Fed. Practice & Procedure* § 2463.1 (3d ed.) (collecting cases); *Spring v. Bd. of Trs. of Cape Fear Cmty. Coll.*, No. 7:15-CV-84-BO, 2016 WL 4204153, at *1 (E.D.N.C. Aug. 8, 2016). The party seeking the court's protection from responding to discovery "must make a particularized showing of why discovery should be denied, and conclusory or generalized statements fail to satisfy this burden as a matter of law." *Mainstreet Collection, Inc. v. Kirkland's, Inc.*, 270 F.R.D. 238, 240 (E.D.N.C. 2010) (citation omitted). Accordingly, it is MMX's burden to show why discovery should be denied. *See U.S. Equal Emp't Opportunity Comm'n v. Bojangles' Rests., Inc.*, No. 5:16-CV-654-BO, 2017 WL 2889493, at *3 (E.D.N.C. July 6, 2017) (citing *Papanicolas v. Project Execution & Control Consulting, LLC*, No. CIV.A. CBD-12-1579, 2015 WL 1242755, at *1 (D. Md. Mar. 17, 2015) (noting that "'[t]he burden of proving that a subpoena is oppressive is on the party moving to quash'"); *Sherrill v. DIO Transp., Inc.*, 317 F.R.D. 609, 612 (D.S.C. 2016) ("[T]he burden of proof is with the party objecting to the discovery to establish that the challenged production should not be permitted.") (citation omitted).

MMX contends the subpoena should be quashed because it is unreasonable, overly broad, and unduly burdensome; seeks irrelevant and confidential documents; and fails to provide adequate

3

time for compliance. Mem. [DE-58] at 4–12. Prior to filing the instant motion, MMX asserted these objections in an email from its counsel to PAC's counsel. Resp. Ex. E [DE-61-5]. In response to these objections, PAC explained its theory of the case—McCoy Wiggins' malpractice prevented PAC from executing its judgment and taking control of Star Leasing; Star Leasing's assets were subsequently transferred to MMX; and PAC's damages in this case are based on the value of Star Leasing, now operating as MMX. *Id.* PAC's counsel also offered to discuss how much additional time MMX would need to comply with the subpoena and the content of a protective order. *Id.*

Despite being informed of PAC's argument as to relevance prior to filing the motion to quash, MMX fails to address it and inexplicably asserts that "it is hard to conceive of a reason why PAC seeks the volumes of financial and corporate records from MMX."[1] Mem. [DE-58] at 4. MMX goes on to generally assert that PAC's damages are unconnected to MMX's records but ignores PAC's assertion that Star Leasing is now operating as MMX, the requested documents are relevant to PAC's damages, and the requested documents are necessary to achieve a valuation of Star Leasing. *Id.* at 4–5; Resp. Ex. E [DE-61-5]. Accordingly, MMX has failed to carry its burden of demonstrating the documents are not relevant.

MMX contends the categories of documents requested are facially overly broad and would produce a burdensome number, roughly 1,500, of responsive documents. Mem. [DE-58] at 5–6. PAC's requests cover a broad range of documents, including, among other things, three years of financial statements, tax returns, budgets and projections, asset lists, accounts payable and receivable lists, key employee compensation schedules, and appraisals; company documents, such as buy-sell

---

[1] The court notes that MMX's counsel is listed in the underlying North Carolina state court action as counsel for Randal Menscer, who PAC contends previously owned Star Leasing, organized MMX, and transferred the assets of Star Leasing to MMX. Resp. [DE-61] at 4 & Ex. C [DE-61-3] at 2.

agreements, real estate and property tax assessments, and loan applications; and two years of banking documents, such as account statements and copies showing disbursements and deposits. Mot. [DE-57] at 9–10. However, a broad request is not necessarily *overly* broad. In *Schaaf*, the court quashed a subpoena seeking *all* documents over a ten year period, characterizing it as "a paradigmatic example of a facially overbroad subpoena" and observing that "[a] large quantity of the documents sought have no connection to anything involved in the case." 233 F.R.D. at 455. In contrast, the subpoena at issue here requests specific categories of documents from a two to three year period; the information sought appears relevant to Star Leasing's valuation and, in turn, PAC's damages; and 1,500 documents is not an inordinate number. Accordingly, MMX has failed to demonstrate the subpoena is overly broad.

Furthermore, PAC has demonstrated a need for the documents that outweighs the potential burden on MMX. PAC asserts that the documents are necessary to value Star Leasing; that Menscer was the president of Star Leasing, later formed MMX, and transferred Star Leasing's assets to MMX; and that MMX operates in the same building with the same employees and the same equipment as Star Leasing. Resp. [DE-61] at 1, 4, 8. PAC has subpoenaed documents from Star Leasing, also a non-party, that predate the formation of MMX, and it is not apparent what other source could more readily produce the requested information. [DE-64].

MMX contends the subpoena requires disclosure of confidential information. Mem. [DE-58] at 6–10. In an affidavit, MMX's comptroller asserts that access to the requested documents is limited in the regular course of business due to the commercially sensitive and confidential nature of the documents, and she provides specific examples of how disclosure of certain information could harm MMX's business. Locklear Aff. [DE-59] ¶¶ 12–21. Allowing MMX to produce documents

5

subject to a protective order is sufficient to address MMX's valid concerns regarding the potential dissemination and misuse of its commercially sensitive information.

MMX contends the subpoena does not provide adequate time for compliance and asserts it would take a minimum of eight weeks to comply. Mem. [DE-58] at 10–11. MMX is a small business with a limited number of employees capable of searching for relevant documents, some of which are stored offsite. Locklear Aff. [DE-59] ¶¶ 4–11. The deadline for compliance set forth in the subpoena has passed, and the court finds 45 days to be a reasonable amount of time to produce the documents.

Finally, MMX requests that any further subpoena issued to MMX in this case be issued by the court rather than the parties of their counsel. The court finds no cause to deviate from Fed. R. Civ. P. 45(a)(3), which provides that the clerk must issue a subpoena in blank to a party who requests it, and an authorized attorney may issue and sign a subpoena.

### III. CONCLUSION

For the reasons stated above, MMX's motion [DE-57] is denied as to the request to quash or modify and allowed as to the request for a protective order to govern the production of confidential information. MMX shall produce the requested documents, pursuant to a protective order, within **45 days** of the date of this order, and counsel for PAC and MMX shall confer and submit within **14 days** a proposed protective order to govern the production of confidential documents.

SO ORDERED, the 20th day of February 2019.

Robert B. Jones, Jr.
United States Magistrate Judge

6